## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SHAWN ANDERSON

VERSUS

STATE OF LOUISIANA, THROUGH THE
LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.

CIVIL ACTION

NO. 09-0075-JJB-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this _____ 21st _____ day of May, 2010.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SHAWN ANDERSON                                                         CIVIL ACTION

VERSUS

STATE OF LOUISIANA, THROUGH THE                                        NO. 09-0075-JJB-DLD
LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on referral from the District Judge of the plaintiff's Motion to Modify the Scheduling Order and Amend the Complaint, rec.doc.no. 26. The defendants do not object to modification of the Scheduling Order to allow for an extension of the discovery deadlines but oppose amendment of the Complaint.[1]

The plaintiff, an inmate previously confined at the Louisiana State Penitentiary ("LSP") and currently confined at Elayn Hunt Correctional Center ("EHCC"), filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1, et seq. ("RLUIPA"), against the State of Louisiana, through the Louisiana Department of Public Safety and Corrections, Secretary James M. LeBlanc, LSP Warden Burl Cain, LSP Dpty Warden Richard L. Peabody and LSP Muslim Chaplin Yusuf Abdullah, complaining that the defendants have violated his constitutional rights under RLUIPA and the First and Fourteenth Amendments by (1) refusing him access to Nation of Islam publications and materials, and (2) refusing to allow him to assemble, counsel or worship with other members of the Nation of Islam. In the original Complaint, the plaintiff prayed only for injunctive relief against the defendants in both their individual and official capacities under § 1983 and in their official capacities under RLUIPA.

---

[1] Inasmuch as the parties have submitted a separate Joint Motion to Modify the Scheduling Order to allow for the extension of certain discovery and pretrial deadlines, rec.doc.no. 41, the Court will deny the instant motion filed by the plaintiff and will address the parties' joint motion in a separate Order.

Pursuant to earlier Ruling in this case, rec.doc.no. 17, the plaintiff's claims against the State of Louisiana, through the Louisiana Department of Public Safety and Corrections, have been dismissed.

Pursuant to a Scheduling Conference held on June 4, 2009, the Court accepted the recommendations of the parties and set a deadline of May 21, 2009, for adding new parties and adding new claims, counterclaims or cross-claims, and a deadline of October 5, 2009, for completing non-expert discovery.  Upon the filing of a Joint Motion to Modify the Scheduling Order on September 22, 2009, rec.doc.no. 24, the Court consented to the parties' proposed new discovery deadline of January 29, 2010.  On December 2, 2009, more than six months after the agreed-upon deadline for adding new parties and claims, the plaintiff filed the instant Motion to Amend the Complaint, wherein he now seeks to add a claim of retaliation against defendants employed at both LSP and EHCC, to add new defendants employed at EHCC (both for enforcement of the original claim for equitable relief and for the new claim of retaliation), to add a new defendant employed at LSP (for the new claim of retaliation), and to add a new prayer for nominal and punitive damages.

Rule 16(b) of the Federal Rules of Civil Procedure provides that, as a general rule, a Court must issue a scheduling order in a civil case and must therein limit the time to join other parties and amend the pleadings.  Rule 16(b)(1) and 16(b)(3)(A).  Thereafter, a scheduling order may only be modified with the judge's consent and for good cause shown.  Rule 16(b)(4).  Once the deadline for joining additional parties and amending the pleadings has passed, the Court must first determine whether the good cause requirement of Rule 16(b)(4) has been met before considering whether to grant a motion to modify the scheduling order.   S&W Enterprises v. SouthTrust Bank of Alabama, 315 F.3d 533 (5th Cir. 2003).  In determining whether a party has shown good cause for seeking late modification of the scheduling order, the Court must consider (1) the party's explanation for failing to timely move to amend, (2) the importance of the amendment, (3) the potential prejudice arising from the late amendment, and (4) the availability of a continuance to alleviate any such prejudice.  S&W Enterprises v. Southtrust Bank of Alabama, supra; Geiserman

v. MacDonald, 893 F.2d 787 (5ᵗʰ Cir. 1990).  Although Rule 15(a)(2) provides that leave of court

to amend a Complaint should be freely given when justice requires, courts have routinely found that

such leave is not warranted where good cause has not been shown to modify a scheduling order

under Rule 16(b)(4).  See S&W Enterprises v. Southtrust Bank of Alabama, supra ("Only upon the

movant's demonstration of good cause to modify the scheduling order will the more liberal standard

of Rule 15(a) apply to the district court's decision to grant or deny leave."); Callais v. Susan Vizier,

Inc., 2000 WL 278097 (E.D. La. March 13, 2000).   The plaintiff's initial Complaint was filed on

February 5, 2009.  In that Complaint, he asserted the principal claims that he (1) had been denied

access to Nation of Islam publications and (2) had been denied the right to meet with other Nation

of Islam members.  In addition, whereas he "purposely" did not assert a claim of retaliation, he

factually alleged that in response to his attempts to remedy these deprivations, he had been

retaliated against by prison officials through the imposition of a false and retaliatory disciplinary

report and through punishment in the form of a transfer to punitive segregated confinement.[2]  At

the time of filing of his original Complaint, he had been confined in segregated confinement for

more than six months on a charge which he allegedly knew to be false and which believed to have

been retaliatory.  According to the plaintiff, he "purposely" chose not include a claim of retaliation

because he was not then convinced that he could prove that claim.  He now seeks to make that

claim, however, allegedly because of events occurring "months after the May 21, 2009 deadline

for amending the complaint".  These events did not occur until August, 2009 (when a periodic

review board at LSP recommended that he be released from punitive segregated confinement but

when this recommendation was overruled by prison officials), September, 2009 (when he was

transferred to EHCC and immediately placed in segregated confinement at that institution, where

the conditions are allegedly more onerous and where the restrictions on his exercise of religious

freedom are continued), and October, 2009 (when a periodic review board at EHCC again

_____

[2]        In the plaintiff's opposition to the defendants previously-filed motion to dismiss, the
plaintiff conceded that he "purposefully did not include a retaliation claim in this action."  See
rec.doc.no. 16 at note 3.  See also id., at p. 1 ("Mr. Anderson has not asserted a claim for
retaliation.").

recommended that he be released from segregated confinement and when this recommendation was again overruled by prison officials).  In addition, the plaintiff asserts that he has since learned through discovery that his confinement in segregated confinement for more than seventeen months is disproportionate to disciplinary sentences given to other inmates with similar charges.  The plaintiff asserts, based upon these new factual developments, that he is now able to pursue a claim for retaliation against LSP and EHCC personnel, both for the initial disciplinary charge in May, 2008, and for the alleged continuing retaliatory conduct thereafter, and also to pursue a claim for nominal and punitive damages against the LSP and EHCC defendants.  In addition, because of his transfer to EHCC, the plaintiff seeks to add as defendants administrative personnel at EHCC so that any equitable relief which may be awarded to him can be enforced against personnel at his current place of confinement.

In addressing whether the plaintiff has shown good cause to amend the scheduling order, the Court first looks to the explanation given by the party for failing to timely move to amend. Although the plaintiff maintains that he has shown due diligence in this case, the record does not bear this assertion out.  In the first place, there is no reason whatever given by the plaintiff as to why his claim for nominal and punitive damages could not have been previously asserted.  Second, by the plaintiff's own admission, he was aware of his retaliation claim at the time that he filed his original complaint, and indeed months before, inasmuch as he had been charged with an alleged false and "trumped-up" disciplinary report in June, 2008, more than six months prior to filing, and had been wrongly sentenced to punitive extended lockdown.  Indeed, he apparently filed an administrative grievance at LSP in June, 2008, wherein he explicitly complained that the disciplinary report was retaliatory.  Notwithstanding, he "purposely" chose to omit his retaliation claim from the Complaint.  Further, inasmuch as lockdown review boards are held every 90 days at LSP to consider an inmate's release from extended lockdown, the plaintiff presumably had one or two lockdown review board hearings prior to the filing of his initial Complaint and an additional one or two lockdown review board hearings thereafter, at each of which he was apparently denied release, prior to the scheduling conference of June 4, 2009.  These denials presumably added additional

weight to his potential retaliation claim.  Notwithstanding, the plaintiff agreed at the scheduling conference to a May 21, 2009 deadline for the joining of parties and the amendment of pleadings and said nothing regarding any intent to add a retaliation claim.  Thereafter, in August of 2009, the plaintiff apparently had a lockdown review board hearing at which his release was recommended, and after which this recommendation was overruled by supervisory officials.  Further, on September 8, 2009, he was summarily transferred to EHCC and was immediately placed in extended lockdown at that location, which he asserts is more onerous than lockdown at LSP. Notwithstanding, on September 22, 2009, after these events had transpired, the plaintiff filed a joint motion to extend the deadlines set forth in the scheduling order, but only sought amendment of the deadlines for discovery.  Again the plaintiff gave no indication that he wished to amend the pleadings to add any new claims and/or parties.  Finally, in October, 2009, the plaintiff again was given a recommendation for release from extended lockdown and again this recommendation was overruled by supervisory officials.  Yet the plaintiff waited an additional six weeks, until December 2, 2009, before he sought leave to modify the scheduling order and to amend the Complaint.  On this record, the Court cannot find that the plaintiff's explanation for failing to timely seek leave of Court to amend the scheduling order supports a finding of due diligence on his part.

Turning to the second element of the good cause determination, i.e., the importance of the amendment to the party, the plaintiff contends that it is important that the proper parties be named in this proceeding in order for injunctive relief to be effective at the plaintiff's current place of confinement.  Whereas the plaintiff is marginally correct in this regard, the Court finds that the Secretary of the Louisiana Department of Public Safety and Corrections, who is already named as a defendant herein, has the authority to enforce any injunctive relief which may be granted. Accordingly, whereas it might be advantageous to have the EHCC Warden, Deputy Warden of Programs, and Chaplain named as parties, it is not necessarily "important" or critical to the case and to the relief initially prayed for by the plaintiff.  The plaintiff further contends that it is important to allow the amendment, so as "to prevent the ongoing retaliation for attempting to practice his religious beliefs and for attempting to vindicate his rights through the courts."  However, this is the

very claim which the plaintiff "purposefully" chose to omit from his original Complaint and only now seeks to pursue, almost a year after his initial filing.  If it was not seen by the plaintiff to be sufficiently important to include at an earlier point in the proceedings, the Court does not weigh heavily its importance at the present time.

      With regard to the third element of the good cause analysis, i.e., whether the defendants will suffer prejudice if the amendment is allowed, the plaintiff contends that "[t]he litigation is in its early stages", that only one deposition has been taken to date, and that the "[d]efendants are still in the process of responding to Mr. Anderson's discovery requests."  Accordingly, the plaintiff asserts that no prejudice will result if the amendment is allowed.  In response, the defendants contend that they have expended substantial time, effort and resources in responding to discovery and that, in addition to the production of electronic materials, they have provided over 5,500 pages of documents to the plaintiff, have taken the plaintiff's deposition, and have responded to three sets of admissions, two sets of interrogatories, and four sets of document requests.  An entirely new claim of retaliation, a new demand for nominal and punitive damages, and the addition of new defendants to respond to these claims will necessitate additional avenues of fact discovery, the likely re-taking of the plaintiff's deposition, and likely intrusive inquiries into the personal finances of each defendant (for purposes of the punitive damages claim).  In addition, if the amendment is allowed, the individual defendants will face the prospect of potential monetary liability, a prospect that they did not heretofore face.  Accordingly, it does not appear that the defendants will suffer no prejudice at all as a result of the amendment.

      Nor does the possibility of an extension of the discovery deadline operate to entirely cure the potential prejudice resulting from allowance of the amendment.  As previously noted, the defendants would face new personal liability for punitive damages which they did not previously face.  Further, the time and expense of additional discovery into areas not previously relevant is not entirely to be discounted.  Accordingly, in light of the perceived weakness of the plaintiff's arguments in connection with the other three elements of the good cause analysis, and in light of the fact that the discovery deadline has already been extended on one occasion upon joint motion

of the parties (and will be extended again in light of the delay in discovery attendant to the instant motion), the Court does not place great emphasis upon any potential benefit which may be obtained by an extension of the discovery deadline.

Based upon the foregoing, the Court finds that the plaintiff has not show good cause for modification of the scheduling order so as to permit amendment of the original Complaint to add new claims and parties and to add a new prayer for nominal and punitive damages.  There is one caveat to this conclusion, however.  At the time of filing of the original Complaint, the plaintiff was housed at LSP and so asserted a claim for injunctive relief relative to deprivations occurring at that institution only.  He was not then aware, apparently, that these deprivation would continue upon his transfer the EHCC in August, 2009.  Accordingly, in the interest of justice, and in order to avoid the inequity which might result upon a finding that the plaintiff's original claim for injunctive relief has been rendered moot by his transfer to another institution, see Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078 (5th Cir. 1991) (holding that prisoner transferred out of an offending institution could not state a claim for injunctive relief), the Court believes that there is good cause to allow amendment of the Complaint to assert the claim, raised in paragraphs 36 through 40 of the proposed Amended Complaint, that the refusal to allow the plaintiff to receive Nation of Islam materials and publications  and the refusal to allow him to assemble, counsel or worship with other members of the Nation of Islam is the result of a "state-wide policy" developed in part by defendants Cain and LeBlanc, which policy results in continued deprivations suffered by the plaintiff at EHCC.  For this reason, the Court recommends that the plaintiff's motion be granted in this limited respect.

## RECOMMENDATION

It is recommended that the plaintiff's Motion to Modify the Scheduling Order and to Amend the Complaint, rec.doc.no. 26, be granted in part, such that the Complaint be amended to assert the claim stated in paragraphs 36 through 40 of the proposed Amended Complaint regarding an

alleged state-wide policy with respect to the Nation of Islam, and denied in all other respects.

Baton Rouge, Louisiana, this _21st_ day of May, 2010.

DOCIA L. DALBY
MAGISTRATE JUDGE